2017 UT App 69

## THE UTAH COURT OF APPEALS

TERRY R. SPENCER AND TR SPENCER & ASSOCIATES PC,
Appellants,
*v.*
STEPHEN M. GLOVER,
Appellee.

Opinion
No. 20150892-CA
Filed April 20, 2017

Third District Court, Salt Lake Department
The Honorable L. Douglas Hogan
No. 150903279

Gavin V. Collier and Terry R. Spencer, Attorneys
for Appellants

Robert B. Cummings, Attorney for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and JILL M. POHLMAN concurred.

TOOMEY, Judge:

¶1     Attorney Terry R. Spencer and his law firm appeal the decision of the district court dismissing his suit under rule 12(b)(6) of the Utah Rules of Civil Procedure. Spencer contends the court erred in determining that an online review posted by Stephen M. Glover was "mere opinion" and thus not actionable defamation. We affirm.

## BACKGROUND

¶2     Spencer represented Glover in his divorce proceedings. Glover was unsatisfied with the representation and ultimately retained new counsel. He subsequently posted a review

regarding Spencer and his services on yelp.com, an online comment aggregator.[1] The review stated:

> Worst ever. Had to fire him after I gave him a chance for well over a year. Paid him his $2,500 retainer, then paid him another $2,500 shortly after . . . and I still owe him another several thousand dollars! . . . all for his hunt-and-peck filing typing b.s. while he makes me watch. I'd be willing to wager that he was sitting on it and running the bill up until I produced money that she had not gotten her hands on. There was none that she had not gotten her hands on. She admitted that she spent the $40k in the safe. My order is _still_ based on substantially higher income earned the hard way in the Middle East, supporting my family by supporting those who protect our freedom. The arrears [have] become astronomical and ORS is threatening to take my license and passport . . . Yelled at me once when I called to ask him about something his office had sent me that day. Told me to "GOOGLE IT!" Worst. Ever. Filed a Utah Bar complaint and strongly considering suing him. Just have to find someone to do it.

¶3 Spencer asked Glover to remove the review, and when Glover refused, Spencer filed suit against him for defamation, intentional infliction of emotional distress, and intentional

---

1. Yelp Inc. is a company that "describes itself generally as an online networking platform that connects people with great local businesses by hosting user-generated reviews." *Curry v. Yelp Inc.*, No. 14-cv-03547-JST, 2015 WL 1849037, at *1 (N.D. Cal. Apr. 21, 2015) (citation and internal quotation marks omitted).

interference with prospective economic relations.[2] Glover moved to dismiss all three claims for failure to state a claim upon which relief could be granted.

¶4 The district court granted Glover's motion to dismiss. Regarding the defamation claim, the court, assuming the statements in the review were false and resulted in damage to Spencer, determined the statements were "mere opinion" and dismissed the claim. The court next dismissed the claim for intentional infliction of emotional distress, stating that "[w]riting and publishing a critical online review does not amount to outrageous and intolerable behavior, particularly where there is no defamation." Finally, the court dismissed the interference with economic relations claim because even if Glover had "intentionally interfered with Spencer's prospective economic relations," Spencer did not demonstrate that writing an online review was an "improper means" where the review was not defamatory and no other impropriety was apparent. Spencer appeals.

---

2. Spencer's complaint contained two additional causes of action: declaratory relief and breach of contract. The district court dismissed Spencer's declaratory relief cause of action, reasoning that because Spencer's other claims had failed, no "justiciable controversy" remained. *See Miller v. Weaver*, 2003 UT 12, ¶ 15, 66 P.3d 592 (determining that "a justiciable controversy" is a necessary element to proceed with a declaratory judgment action). The court also dismissed the breach of contract cause of action, ordering the parties to arbitrate that claim. Spencer does not appeal the dismissal of either of these claims, and we do not address them further.

ISSUES AND STANDARD OF REVIEW

¶5     Spencer raises three issues on appeal. First, he contends the district court erred in dismissing his defamation claim. When reviewing claims of defamation that are dismissed for failure to state a claim, "we accept as true all material allegations contained in the complaint," *West v. Thomson Newspapers*, 872 P.2d 999, 1004 (Utah 1994), but we do not "indulge [the appellant] by interpreting inferences that may be reasonably drawn from the statements in favor of a defamatory meaning," *Jacob v. Bezzant*, 2009 UT 37, ¶ 18, 212 P.3d 535. Instead, we "look to the context of the allegedly defamatory statement and then, in a nondeferential manner, reach an independent conclusion about the statement's susceptibility to a defamatory interpretation." *Id.* (citation and internal quotation marks omitted). This determination is a question of law, reviewed for correctness. *Id.* Additionally, whether the motion to dismiss was properly granted is also a question of law that we review for correctness. *West*, 872 P.2d at 1004.

¶6     As to his second and third issue on appeal, Spencer contends the court erred in dismissing both his intentional infliction of emotional distress claim and his intentional interference with prospective economic relations claim. His challenge to the dismissal of these claims hinges on his assertion that the court erroneously determined that the online review was not actionable defamation. Because we conclude the court's decision regarding the defamation claim was correct, we need not address these two issues on appeal.

ANALYSIS

¶7     Spencer contends the district court erred in determining Glover's review was "mere opinion" and thus not defamatory. "Under Utah law, a statement is defamatory if it impeaches an individual's honesty, integrity, virtue, or reputation and thereby

exposes the individual to public hatred, contempt, or ridicule." *Id.* at 1008. "At its core, an action for defamation is intended to protect an individual's interest in maintaining a good reputation." *Id.* The "guiding principle" in determining whether a statement is defamatory is "the statement's tendency to injure a reputation in the eyes of its audience." *Id.* A defamatory statement requires "more than sharp criticism"—"[a] publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff." *Id.* at 1009 (citations and internal quotation marks omitted). To make this determination, a court cannot "view[] individual words in isolation" but must "carefully examine the context in which the statement was made." *Id.*

¶8     Even if a statement is defamatory, the "Utah Constitution provides an independent source of protection for expressions of opinion." *Id.* at 1013. "Because expressions of pure opinion fuel the marketplace of ideas and because such expressions are incapable of being verified, they cannot serve as the basis for defamation liability." *Id.* at 1015. But the Utah Supreme Court has noted that "opinions rarely stand alone, isolated from any factual moorings. To convince readers of the legitimacy of an opinion, authors typically describe the perceived factual bases for opinions, seeking to demonstrate that the author's opinions are grounded in common sense." *Id.* And although the Utah Constitution protects expressions of opinion, this protection is abused "when the opinion states or implies facts that are false and defamatory. If the opinion does not state or imply such facts or if the underlying facts are not defamatory, an action for defamation is improper." *Id.* Thus, our inquiry is whether the online review is a protected expression of opinion, and whether the opinion states or implies underlying defamatory facts.

¶9     The distinction between opinion and fact is not always clear, and our supreme court has outlined four factors that are "useful in distinguishing fact from opinion":

> (i) the common usage or meaning of the words used; (ii) whether the statement is capable of being objectively verified as true or false; (iii) the full context of the statement—for example, the entire article or column—in which the defamatory statement is made; and (iv) the broader setting in which the statement appears.

*Id.* at 1018.

¶10    First, we analyze the online review under these four factors to determine whether it was an opinion, identifying any potentially defamatory statements in the review. Because we conclude the online review was an opinion, we next determine whether it stated or implied any underlying facts, and decide whether those underlying facts were defamatory.

I. The Online Review Was an Expression of Opinion.

A.     Whether the Statements Are Capable of Being Objectively Verified

¶11    As we begin our analysis, we employ the "common usage or meaning of the words" to determine "whether the statement is capable of being objectively verified as true or false." *See West v. Thomson Newspapers*, 872 P.2d 999, 1018 (Utah 1994). Glover made six potentially defamatory statements in the online review: (1) "Worst ever"; (2) "Had to fire him after I gave him a chance for well over a year"; (3) "all for his hunt-and-peck filing typing b.s. while he makes me watch"; (4) "I'd be willing to wager that he was sitting on it and running the bill up until I produced money that she had not gotten her hands on"; (5) "Yelled at me once when I called to ask him about something his office had

sent me that day. Told me to 'GOOGLE IT!'"; (6) "Filed a Utah Bar complaint and strongly considering suing him."[3]

¶12    The first statement, "[w]orst ever,"[4] is not subject to objective verification. The word "worst" is a superlative, and can mean the "most bad, evil," the "most unfavorable, unpleasant," the "most unsuitable, faulty," the "least skilled or efficient" or the "most wanting in quality." *Worst*, Webster's Third New International Dictionary (1968). There are no objective criteria from which to determine whether someone is the "worst." "Ever" is "used as an intensive with a superlative" and means "through all time." *Ever*, Webster's Third New International Dictionary (1968). The phrase "worst ever" expresses Glover's subjective belief and "amounts to rhetorical hyperbole." *Cf. Seaton v. TripAdvisor LLC*, 728 F.3d 592, 598 (6th Cir. 2013) (concluding that "'[d]irtiest' is a loose, hyperbolic term because it is the superlative of an adjective that conveys an inherently subjective concept").

¶13    Spencer argues it is possible to demonstrate the phrase "worst ever" is false because he has twenty-five years of experience as an attorney and has never been disciplined by the Utah State Bar. He therefore cannot be the "worst" attorney,

---

3. In the review, Glover also complained that "[t]he arrears [have] become astronomical." This appeared after Glover stated "[t]here was [no money] that [his ex-spouse] had not gotten her hands on," and "[m]y order is _still_ based on substantially higher income earned the hard way in the Middle East." Given this context, Glover's complaint about astronomical arrears is not directed toward Spencer, and so is not a potentially defamatory statement.

4. Glover repeated this language later in the online review, with additional punctuation for emphasis: "Worst. Ever."

because others, who have received professional discipline, must be worse than he is. Thus, he reasons, the phrase "worst ever" can be objectively determined to be true or false. This argument makes sense if a reader would likely understand the phrase "worst ever" in a strictly literal sense. But no reader would. "Worst ever" is a common colloquial phrase used to express a strong negative opinion. When a person declares that he or she just went on the worst date ever, no reasonable listener would understand that statement as a claim that the speaker exhaustively researched all the dates in the history of dating, developed objective scoring criteria, and determined as a matter of fact that last night's date was worse than dates that ended in death, violence, or vomiting in a restaurant. Likewise, if a person declares that his doctor is the worst ever, no reasonable listener would understand the statement to mean that the doctor was worse than Dr. Josef Mengele. Similarly, no reasonable reader would have read Glover's comment, especially in context, as an assertion of fact rather than an assertion of opinion.

¶14    The second statement is also not capable of objective verification. Glover wrote that he "[h]ad to fire [Spencer] after giving him a chance for well over a year." We agree with Spencer that the common usage of "had to" in this context suggests that Glover was forced to, or had no choice but to fire Spencer. But whether Glover believed he had no choice but to fire Spencer "is something only [Glover] himself knows, not something that is subject to objective verification." *See West*, 872 P.2d at 1019 (noting that whether a mayor "intended to dupe voters into electing him mayor by misrepresenting his position" is something only the mayor himself could know, and not "subject to objective verification"). Furthermore, whether Glover gave Spencer "a chance for well over a year" is Glover's subjective assessment, and is something only Glover himself could know. It cannot be shown to be true or false.

¶15 As for the third and fourth statements—"the 'hunt-and-peck' comment and the 'running up the bill' comment"—Spencer acknowledges in his brief that they are also not capable of objective verification.

¶16 A portion of the fifth statement, on the other hand, can be objectively demonstrated to be true or false. The online review stated that Spencer "yelled" at Glover and told him to google[5] something. To yell is to "utter a loud cry, scream, or shout." *Yell*, Webster's Third New International Dictionary (1968). Whether a person yelled depends at least to some extent on the hearer—what qualifies as a yell to some may not be understood as such by others. But whether Spencer told Glover to google something can be objectively verified.

¶17 The sixth statement also can be objectively verified. Whether Glover actually filed a complaint against Spencer is demonstrable true or false, as is whether Glover was considering suing Spencer.

¶18 In sum, three statements in the online review are subject to objective verification: (1) whether Spencer told Glover to google something, (2) whether Glover filed a complaint with the Utah State Bar against Spencer, and (3) whether Glover was considering suing Spencer. The rest of the statements in the online review cannot be objectively verified and weigh in favor of a determination that the review expressed an opinion.

---

5. To "google" means "to use the Google search engine to obtain information about (as a person) on the World Wide Web." *Google*, Merriam Webster's Collegiate Dictionary (11th ed. 2007).

B.    The Broader Setting in Which the Statements Appear and the Full Context of the Statements

¶19    Next, we consider the broader setting in which the statements were made and the full context of the statements. Glover's review was posted on yelp.com, a website where people post business reviews, commenting on their experiences and degrees of satisfaction with particular businesses. The district court determined that "a necessarily subjective online review of a particular business, published in the review section of a website commonly used by customers to rank their experiences with businesses of all kinds," indicates that the statements were an expression of opinion. We agree with the district court. In *West*, our supreme court determined that an article was a protected opinion, in part because it was published in a weekly editorial column. *West v. Thomson Newspapers*, 872 P.2d 999, 1020 (Utah 1994). The article's publication in that setting was enough to indicate to readers that the statements were not "hard news" and argued "strongly in favor of finding the statements to be protected opinion." *Id.* (internal quotation marks omitted). There is a similar situation here. Online reviews communicate a person's experience with and opinion of a business. "Some types of writing or speech by custom or convention signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* (citation and internal quotation marks omitted). The presence of Glover's objectionable statements in an online review platform signals to readers that he was communicating his negative opinion about Spencer.

¶20    Additionally, given the full context of Glover's statements, it is apparent that Glover was in the midst of an acrimonious divorce and that he was upset about the money he owed to Spencer and the division of marital assets in the divorce proceedings. Glover used hyperbolic phrases throughout the review. Given this context, "[i]t is unlikely that any reader

would take [the review] at face value," because "most readers would view it as exaggerated commentary expressing [Glover's] frustration." *See id.* at 1010. For example, readers are unlikely to take literally Glover's statement that Spencer was the "[w]orst ever," but rather would interpret it as conveying Glover's general dissatisfaction with Spencer's performance. For these reasons, the full context of the online review reveals it as an expression of opinion.[6]

¶21   In sum, after considering Glover's statements in light of the factors identified in *West*, we conclude that the online review constituted an expression of opinion, which is protected by the

---

6. The district court stated that the "context of the review also shows that the statements were made by a biased, and therefore potentially unreliable, individual." In his brief, Spencer alleges that the court relied on "external 'mental-health related facts or claims'" in determining that the context of the online review demonstrated it was an expression of opinion. Spencer also claims that the district court focused on "Glover's questionable mental health" in classifying the review as an opinion, and he argues that Glover's "biased and diminished state of mind" should not determine whether the review was an opinion, because an average reader could not "objectively conclude that Glover is biased, unreliable or mentally ill" based only on his comments. Having located no reference to Glover's mental health in the district court's order, this court during oral argument inquired about Spencer's comments. Spencer responded that the court's statement concerning Glover's bias and potential unreliability indicated that Glover suffered from mental illness. Spencer added that he did not "know how else to read" the court's statement. On the contrary, we do not believe that any impartial observer could read the court's statement as Spencer does.

Utah Constitution unless the opinion states or implies underlying defamatory facts.

## II. The Underlying Facts Were Not Defamatory.

¶22    Our next inquiry is whether the review states or implies underlying facts, and whether these facts were defamatory. If the facts are not defamatory, there is no basis for a defamation lawsuit. *See West v. Thomson Newspapers*, 872 P.2d 999, 1015 (Utah 1994).

¶23    The review states several facts: (1) that Glover paid Spencer thousands of dollars and owed more, (2) that Spencer, instead of answering Glover's inquiry, told him to "GOOGLE IT!," (3) that Glover filed a complaint against Spencer with the Utah State Bar, and (4) that Glover was considering suing Spencer.

¶24    Again, a defamatory statement "impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule." *Id.* at 1008. We conclude that none of these statements is defamatory.

¶25    First, Glover alleged he paid Spencer five thousand dollars and owed him thousands more. But the review also indicated that Spencer represented Glover in his divorce proceedings for more than one year. Although Glover was dissatisfied with the representation, the fact that Spencer charged Glover for services rendered would not injure Spencer's reputation in the eyes of the public. *See id.*

¶26    Second, Glover alleged that when he asked Spencer a question, Spencer told him to "GOOGLE IT!," essentially telling Glover to find the answer to his question himself. This also is not defamatory. Although it might portray Spencer in a negative light for being curt with a client, this type of behavior would not

expose an attorney "to public hatred, contempt, or ridicule." *See id.*

¶27 Third, the fact that Glover filed a complaint against Spencer cannot support a defamation claim. Spencer concedes in his brief that Glover filed a complaint against him, and "[i]n this state, truth is an absolute defense to an action for defamation." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 57 (Utah 1991).

¶28 Finally, Glover alleged that he was considering suing Spencer. Although this indicates Glover was dissatisfied with Spencer's representation, the fact that a person might be contemplating a lawsuit against another doesn't injure his reputation to the point that he is exposed to hatred, contempt, or ridicule. A statement that a person is "strongly considering suing" another is not defamatory.

¶29 For these reasons, we conclude that none of the underlying facts of the online review is defamatory. Because they are not defamatory, the district court correctly dismissed Spencer's suit. *See West*, 872 P.2d at 1015.

CONCLUSION

¶30 The district court correctly dismissed Spencer's defamation claim because the review was an expression of opinion protected by the Utah Constitution and because the underlying facts stated in the review are not defamatory.

―――――――