**2023 UT App 32**

## THE UTAH COURT OF APPEALS

RAINFOCUS INC.,
Appellant,
*v.*
CVENT INC.,
Appellee.

Opinion
No. 20210611-CA
Filed April 6, 2023

Fourth District Court, Provo Department
The Honorable Robert C. Lunnen
No. 200400682

Alexander Dushku, Cameron Hancock, Justin Starr,
James Burton, and Michael Eixenberger,
Attorneys for Appellant

Marc T. Rasich, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
RYAN D. TENNEY concurred.

MORTENSEN, Judge:

¶1      RainFocus Inc. sued Cvent Inc., its competitor, on claims of defamation flowing from statements Cvent allegedly made to clients or prospective clients asserting that RainFocus misappropriated its trade secrets and copyrights. Cvent moved to dismiss the suit, and the district court ruled that the statements were not subject to a defamatory meaning because they either were truthful statements about a federal lawsuit Cvent had filed against RainFocus or were protected statements of opinion. We hold that the statements were subject to a defamatory meaning because repeating allegations from a lawsuit does not inoculate a party from defamation and because the totality of the

circumstances—including the broader setting of Cvent attempting to undercut RainFocus's business through private communications tarnishing its reputation—favors an interpretation of the statements as fact-based rather than as protected opinion. Accordingly, we reverse.

BACKGROUND[1]

¶2 Cvent and RainFocus are market competitors offering software services for event management. In 2017, Cvent sued RainFocus and other defendants in federal court (the Federal Action), alleging trade secret misappropriation and tortious interference, among other things. While the Federal Action was ongoing, RainFocus filed the present suit in a Utah district court, alleging defamation and intentional interference with economic relations against Cvent.[2]

¶3 RainFocus's defamation claim is based on four alleged communications made outside of the Federal Action.[3] In sum, in

---

1. Because we are reviewing the district court's dismissal of RainFocus's complaint for failure to state a claim, "we accept as true all material allegations contained in the complaint." *West v. Thomson Newspapers*, 872 P.2d 999, 1004 (Utah 1994).

2. The district court case also included Cvent's CEO and general counsel as defendants. The district court dismissed these individual defendants for lack of personal jurisdiction, and RainFocus does not challenge their dismissal. Thus, they are not parties to this appeal.

3. These alleged communications have been sealed in the Federal Action and classified as private in the proceedings below, so we do not repeat their content here, with the exception of facts

(continued…)

each of these four communications, Cvent allegedly made statements claiming that RainFocus stole its source code, misappropriated its trade secrets, interfered with its business relationships, or took other bad actions. Each item obviously references the Federal Action. Three of the four alleged communications—items one, three, and four—consist of emails among Cvent's chief executive officer and founder (CEO) or its general counsel (General Counsel) and representatives of two other companies that were customers or potential customers of RainFocus. RainFocus alleges that CEO, in initially reaching out to these companies, "was not responding to an inquiry from [these companies], but was proactively trying to stop [the companies] from giving business to RainFocus." In item three, under a discussion of the claims at issue in the Federal Action, Cvent said, "[W]e have evidence that they have actually duplicated or plagiarized significant portions of our source code," and "[W]e have evidence that they are using our confidential and proprietary information and trade secrets . . . to lure customers." The final item—item two—is an email allegedly from one of those third-party representatives to himself with notes about a phone call with Cvent—including CEO and General Counsel—on the topic of the Federal Action.[4] The email contains many statements

---

contained in the public briefs and their addenda and language quoted by the parties during oral argument. This requires us to be vague where we prefer to be specific in our recitation and application of the facts, and we recognize that doing so limits the usefulness of this opinion in other circumstances. We note for the sake of the parties and the district court that we have carefully considered each alleged communication independently.

4. Item two contains another email, but the allegedly defamatory language in this second email is not sufficient to sustain a claim of defamation. "A complaint for defamation must set forth the

(continued…)

Cvent allegedly made about its background with RainFocus and about the Federal Action. One of these statements alleges that a third-party expert called this case "the most egregious example of IP theft they have ever seen."

¶4    RainFocus also alleges that "Cvent . . . told other third parties, including current and prospective RainFocus customers, that RainFocus actually duplicated or plagiarized significant portions of Cvent's source code and stole Cvent's confidential and proprietary information, and that RainFocus does not compete fairly."[5]

¶5    Cvent moved to dismiss RainFocus's claims on the basis that Cvent's alleged statements were not defamatory. The district court agreed and dismissed RainFocus's defamation claims for failure to state a claim. The court held that "all of the subject statements are true statements about pending litigation or ancillary reports, mere opinion statements regarding whether [RainFocus] misappropriated Cvent's intellectual property, [and] statements reflecting optimism about the outcome of such pending litigation." The court noted that item four caused the court "some concern because it potentially could take a statement out of the realm of truth or optimism and into the sphere of defamation." "However," the court reasoned, "the context of the entire email puts the situation in focus—[General Counsel] is

language complained of in words or words to that effect." *Zoumadakis v. Uintah Basin Med. Center, Inc.*, 2005 UT App 325, ¶ 3, 122 P.3d 891 (cleaned up). For this email, we have no allegation as to what, specifically, CEO said. Accordingly, we do not consider this email further, and our discussion of item two applies only to the email containing notes from the phone call.

5. While we choose to focus our analysis on the four specific items described, our conclusions apply to these statements—such as they may exist—as well.

speaking about pending litigation[,] . . . not making an affirmative statement that [RainFocus] stole intellectual property." The court also dismissed RainFocus's intentional interference with economic relations claim, reasoning that dismissal of the defamation claims meant RainFocus could not show "improper means"—an essential element of the claim. Accordingly, the court dismissed RainFocus's complaint. RainFocus appeals and asks us to reverse the dismissal of all its claims.[6]

## ISSUE AND STANDARD OF REVIEW

¶6    RainFocus alleges that the district court erroneously dismissed its complaint. When reviewing defamation claims dismissed for failure to state a claim, "we accept as true all material allegations contained in the complaint." *West v. Thomson Newspapers*, 872 P.2d 999, 1004 (Utah 1994). However, we do not "indulge the appellant by interpreting inferences that may be reasonably drawn from the statements in favor of a defamatory meaning." *Spencer v. Glover*, 2017 UT App 69, ¶ 5, 397 P.3d 780 (cleaned up).[7] This is because defamation "never arrives at court

---

6. While we do not address the intentional interference claim independently, our reversal on the defamation claims allows RainFocus to again advance this claim.

7. For some time, various judges on this court have been using the parenthetical "(cleaned up)" to enhance the readability of our opinions. *See State v. Cady*, 2018 UT App 8, ¶ 9 n.2, 414 P.3d 974, *cert. denied*, 421 P.3d 439 (Utah 2018). Our opinions also employ the parenthetical "(quotation simplified)," which is identical in meaning to "(cleaned up)." *See In re K.W.*, 2018 UT App 44, ¶ 15 n.3, 420 P.3d 82. Both parentheticals indicate the omission of internal quotation marks, brackets, ellipses, emphases, internal citations, and footnote signals in published sources, as well as the

(continued…)

without its companion and antagonist, the First Amendment, in tow." *O'Connor v. Burningham*, 2007 UT 58, ¶ 27, 165 P.3d 1214. So "[t]o accommodate the respect we accord its protections of speech, the First Amendment's presence merits altering our customary rules of review by denying a nonmoving party the benefit of a favorable interpretation of factual inferences." *Id.* Rather, "we look to the context of the allegedly defamatory statement and then, in a nondeferential manner, reach an independent conclusion about the statement's susceptibility to a defamatory interpretation." *Spencer*, 2017 UT App 69, ¶ 5 (cleaned up). "This determination is a question of law, reviewed for correctness." *Id.* "Additionally, whether the motion to dismiss

---

traditional parenthetical notation referencing a prior case or cases being quoted. Ellipses indicate all other omissions. We also use these parentheticals to make unbracketed changes to capitalization. Apart from capitalization, alterations to words in the source are indicated by brackets.

These parentheticals are powerful editing tools because they make legal writing less tedious, more streamlined, and more concise. But their appeal begets a temptation to misuse them. And we acknowledge that we have, at times, ventured too far by using them with (1) quotations from unpublished sources not readily available to the public (namely, briefs, lower court documents, and transcripts) and (2) quotations of parenthetical language from cases citing other cases. To be more transparent and precise, we intend to limit our employment of these parentheticals to the circumstances identified in the above paragraph, and we expect practitioners who choose to employ these devices to abide by these same strictures. So that consistency of use might be achieved, the publishers of *The Bluebook* may wish to adopt rules similar to those proffered by Jack Metzler. *See* Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143, 154–55 (2017).

was properly granted is also a question of law that we review for correctness." *Id*.

ANALYSIS

¶7 "To state a claim for defamation, [one] must show that [the other party] published the statements . . . , that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." *West v. Thomson Newspapers*, 872 P.2d 999, 1007 (Utah 1994) (cleaned up). Because this appeal comes before us on a motion to dismiss, we assume without deciding that the statements were false, that they were published with the requisite degree of fault, and that they resulted in damage to RainFocus. *See id.* at 1004. Cvent asserts in its brief that it is not arguing that its statements were privileged. Thus, our question is whether the statements were capable of sustaining a defamatory meaning. *See Jacob v. Bezzant*, 2009 UT 37, ¶¶ 18, 30, 212 P.3d 535 ("Whether a statement is capable of sustaining a defamatory meaning is a question of law." (cleaned up)); *O'Connor v. Burningham*, 2007 UT 58, ¶ 26, 165 P.3d 1214 ("This is not to say that the responsibility of determining whether a statement is defamatory as a matter of law falls to the reviewing court. In the first instance, it does not. Rather, the reviewing court must answer the question of defamatory susceptibility as a matter of law in a nondeferential manner." (cleaned up)).

¶8 A statement is capable of sustaining a defamatory meaning "if it impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule." *Spencer v. Glover*, 2017 UT App 69, ¶ 7, 397 P.3d 780 (cleaned up). "The guiding principle in determining whether a statement is defamatory is the statement's tendency to injure a reputation in the eyes of its audience." *Id.* (cleaned up). This is because "at its core, an action for defamation is intended

to protect an individual's interest in maintaining a good reputation." *Id*. (cleaned up). When determining whether a statement is capable of sustaining a defamatory meaning, "a court cannot view individual words in isolation but must carefully examine the context in which the statement was made." *Id*. (cleaned up).

¶9    Cvent asserts that the alleged statements are not susceptible to a defamatory interpretation because they are either "true statements about the Federal Action" or "constitutionally protected matters of opinion." We disagree and address each argument in turn.

## I. Truth and the Judicial Proceeding Privilege

¶10    In Utah, "truth is an absolute defense to an action for defamation." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 57 (Utah 1991). "The defense of truth is sufficiently established if the defamatory charge is true in substance." *Id*. "Insignificant inaccuracies of expression do not defeat the defense of truth." *Id*. at 58.

¶11    Cvent argues that the statements in item one are "truthful statements about Cvent's allegations in the Federal Action." Likewise, it claims that the statements in item two "are truthful statements about the ongoing federal proceedings." For item three, Cvent alleges that "[t]he statements of which RainFocus complains occur in the . . . explanation of . . . claims and are therefore direct descriptions of the allegations in the Federal Action." Regarding item four, Cvent insists that "based on the rest of the email and the attached summary," General Counsel was referring to the Federal Action. So, Cvent states, "[i]n each example, a proper evaluation of the statements and their context makes clear that Cvent is not making affirmative statements about RainFocus's conduct; it is making truthful statements about the allegations and ongoing proceedings in the Federal Action."

Cvent argues that "such truthful statements about pending litigation cannot form the basis of a defamation claim."

¶12 Cvent relies on *Hinchey v. Horne*, No. CV13-00260-PHX-DGC, 2013 WL 4543994 (D. Ariz. Aug. 28, 2013), for support. In *Hinchey*, a criminal investigator brought a defamation claim based on a screening memorandum prepared by the Chief Deputy Attorney General in an internal investigation that "repeated allegations made by . . . former police officers" in a notice of claim (NOC) "alleging that [the investigator] had fabricated facts in her grand jury testimony." *Id.* at \*1, \*4. The court noted that "[t]he memo merely recount[ed] allegations made in the NOC and attribute[d] them to the NOC." *Id.* at \*10. It reasoned that "[b]ecause the memo's statement—that the NOC claimed [the investigator] fabricated evidence before a grand jury—was true . . . , it cannot provide the basis for a defamation claim." *Id.* Cvent uses this to argue that "when the relevant context makes clear that the statement is a true description of disputed allegations in a public lawsuit, the statement is not defamatory, as the court held in *Hinchey*."

¶13 However, we see significant tension between such a proposed rule and existing Utah case law. Cvent asserts that cases applying the judicial proceeding privilege are "[i]rrelevant," but we are not convinced that this privilege can be extricated from the assertion of truth that Cvent is claiming. Indeed, we are persuaded that this case is controlled by *Pratt v. Nelson*, 2007 UT 41, 164 P.3d 366.

¶14 In *Pratt*, our supreme court explained that "[t]he common law judicial proceeding privilege immunizes certain statements that are made during a judicial proceeding from defamation claims." *Id.* ¶ 27. This privilege "is intended to promote the integrity of the adjudicatory proceeding and its truth finding processes . . . by facilitating the free and open expression by all participants that will only occur if they are not inhibited by the

risk of subsequent defamation suits." *Id.* (cleaned up). For "absolute immunity under the judicial proceeding privilege" to apply, "the statements must be (1) made during or in the course of a judicial proceeding; (2) have some reference to the subject matter of the proceeding; and (3) be made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *Id.* ¶ 28 (cleaned up).

¶15 However, "a party may lose the absolute immunity afforded by the judicial proceeding privilege through excessive publication." *Id.* ¶ 33 (cleaned up). "A publication is excessive if the statement was published to more persons than necessary to resolve the dispute or further the objectives of the proposed litigation." *Id.* (cleaned up). And "the purpose of the excessive publication rule is to prevent abuse of the privilege by publication of defamatory statements to persons who have no connection to the judicial proceeding." *Id.* (cleaned up). "When deciding if a statement was excessively published, we look to the overall circumstances of the publication and determine if the purpose of the judicial proceeding privilege . . . is furthered by the statement's publication." *Id.* ¶ 34 (cleaned up). For example, in *Pratt*, an alleged victim's complaint that listed two persons among many members of a polygamous group, *id.* ¶ 4, was found to be protected by the judicial proceeding privilege, *id.* ¶ 32, but when the alleged victim "called a press conference and distributed various statements to the media for widespread dissemination," *id.* ¶ 48, the court held that the same statements made in the complaint, "when made to the press, were not protected by the judicial proceeding privilege," *id.* ¶ 46. The court reasoned that the "statements were published to more persons than necessary to resolve the dispute or further the objectives of the proposed litigation" because "[t]he press had neither any relation to the pending litigation nor any clear legal interest in the outcome of the case." *Id.*

¶16     While Cvent may not be arguing that the allegedly defamatory statements were covered by the judicial proceeding privilege, it must accept that this privilege applies to its complaint in the Federal Action. If not, the statements alleging misappropriation and other claims contained therein would themselves be subject to a defamation claim, and Cvent's subsequent repetition of them in the statements at issue could be actionable as republishing defamation. *See generally* 50 Am. Jur. 2d *Libel and Slander* § 245 (2023) ("Unless the republication is privileged, the publisher of a false statement made by another person, when the publisher knows the statement to be false, is not protected by the fact that someone else made the statement. Such person is liable for the publication, even though he or she is only repeating the defamatory statement of another, and is careful to ascribe the statements to the original speaker." (cleaned up)).

¶17     Cvent's purported defense of truth rests on the assumption that statements about pending litigation that truthfully repeat the allegations and evidence at issue in the lawsuit are subject to the truth defense, but this is only possible if the underlying allegations are themselves subject to the judicial proceeding privilege. So Cvent's assertion of a defense of truth unattached to the judicial proceeding privilege amounts to something of an attempted end run around that privilege and its limitation in instances of excessive publication. If Cvent's approach were adopted, a party who claims the judicial proceeding privilege but then publishes excessively would be subject to liability, but another party could ignore the privilege and simply argue that the statements (while perhaps themselves untrue) accurately reflect what is alleged in a companion lawsuit and thus escape liability altogether.

¶18     Accordingly, we are hesitant to accept that accurate recitations of claims alleged in a lawsuit are inherently subject to the truth defense given the body of law in Utah restricting

excessive publication of such claims.[8] While we acknowledge that privilege and truth are different doors defendants may walk through to defend against defamation, our case law against excessive publication makes little sense if the truth door is blasted open by a lawsuit such that republished allegations are wholly immunized as long as they are attributed to a privileged source. There would be no need for defendants to claim the judicial proceeding privilege—and no need for courts to strictly apply that privilege—if defendants could republish legal claims in this way.

¶19 Further, if merely putting a listener on notice of the pendency of a lawsuit was enough to protect repetition of the allegations made therein from defamation claims, companies would have an incentive to sue their competitors so that they could freely spread accusations against them based on the ostensible justification of making their audience aware of the pending litigation. This cannot be right. Carte blanche repetition of allegations is exactly the harm the excessive publication limitation aims to prevent: "The salutary policy of allowing freedom of communication in judicial proceedings does not warrant or countenance the dissemination and distribution of defamatory accusations outside of the judicial proceeding. No public purpose is served by allowing a person to unqualifiedly make libelous or defamatory statements about another." *Pratt*, 2007 UT 41, ¶ 47 (cleaned up). Our supreme court has warned against just such a result:

---

8. We assume without deciding that a party is able to—under a defense of truth—provide a minimal statement that it filed a lawsuit or is responding to one and a nominal statement of the general nature of the suit. We need not decide this question or engage in additional line-drawing at this time because Cvent went far beyond this in its statements.

> [W]hile a defamatory pleading is privileged, that pleading cannot be a predicate for dissemination of the defamatory matter to the public or third parties not connected with the judicial proceeding. Otherwise, to cause great harm and mischief a person need only file false and defamatory statements as judicial pleadings and then proceed to republish the defamation at will under the cloak of immunity.

*Id.* (cleaned up). Cvent acknowledges that "[c]ertainly, filing a lawsuit does not give the plaintiff or others an unfettered right to repeat the complaint's allegations as unqualified statements of fact to the press or to others." But this is not all. Our case law makes clear that filing a lawsuit does not provide a right to repeat the allegations at will, even if the allegations themselves are not presented as statements of fact. *Id.* Therefore, we reject the notion that a party's accurate restatements of its own allegations made in pending litigation are inherently defensible as truth.

¶20    And we note that this is not what happened in *Hinchey*, where the notice of claim was not prepared by the author of the memo. 2013 WL 4543994, at *4. Accordingly, the *Hinchey* court addressed a separate issue that we do not reach at this time, namely liability for statements in a screening memo—drafted as part of an internal investigation—that truthfully described allegations made by others in a notice of claim. But when a party to a lawsuit repeats its own allegations made in the suit, we conclude that the judicial proceeding privilege remains attached to the allegations such that their republishing must abide by the limits of the privilege or fall subject to claims for defamation.

¶21    Furthermore, we conclude that Cvent's statements go beyond recounting allegations made in the federal pleadings and attributing them to that source. Not all of Cvent's supposedly true

descriptions of allegations in the Federal Action are couched in language attributing the allegations to Cvent's complaint. This matters. While we do not "view individual words in isolation but must carefully examine the context in which the statement was made" in our defamatory meaning analysis, *Spencer v. Glover*, 2017 UT App 69, ¶ 7, 397 P.3d 780 (cleaned up), there is a difference between stating, "Our complaint alleges X generally," and specifically stating the individual allegations. For the former, our inquiry invokes the judicial proceeding privilege, as discussed above. But for the latter, if a party simply states allegations (even with the backdrop of pending litigation), the underlying allegations themselves would need to be true for the defense of truth to apply. *See Brehany v. Nordstrom*, 812 P.2d 49, 57–58 (Utah 1991) (determining that dismissal of two former employees' defamation claims based on statements that their "dismissals were for drug-related activities" was justified because both "admitted at trial that they had used illegal drugs while employed" and finding that a third former employee "made no such admission[] and the evidence relating to whether she had been involved with illicit drugs was, at best, conflicting," so the court could not "hold as a matter of law that truth was a defense to [her] claim"). While it seems possible that the context of a statement could shift our inquiry from the truth of the allegations to the applicability of the judicial proceeding privilege, we need not determine if that happened here. For statements accurately describing its legal claims, Cvent would need to prove application of the judicial proceeding privilege, which it does not attempt to do. And for mere allegations, Cvent would need to prove the truth of the underlying facts, such as by succeeding in the Federal Action. But as this appeal is before us on a motion to dismiss, we must accept RainFocus's assertion that the underlying allegations are false. Therefore, at this point in the proceedings, Cvent's defense of truth fails as a matter of law.

## II. Opinion

¶22 Cvent next argues that the alleged statements are nondefamatory because they are "constitutionally protected matters of opinion." "Even if a statement is defamatory, the Utah Constitution provides an independent source of protection for expressions of opinion." *Spencer v. Glover*, 2017 UT App 69, ¶ 8, 397 P.3d 780 (cleaned up). "Because expressions of pure opinion fuel the marketplace of ideas and because such expressions are incapable of being verified, they cannot serve as the basis for defamation liability." *Id*. (cleaned up). "But the Utah Supreme Court has noted that opinions rarely stand alone, isolated from any factual moorings. To convince readers of the legitimacy of an opinion, authors typically describe the perceived factual bases for opinions, seeking to demonstrate that the author's opinions are grounded in common sense." *Id*. (cleaned up). And while "the Utah Constitution protects expressions of opinion, this protection is abused when the opinion states or implies facts that are false and defamatory. If the opinion does not state or imply such facts or if the underlying facts are not defamatory, an action for defamation is improper." *Id*. (cleaned up).

¶23 As we determine whether Cvent's statements were protected expressions of opinion, we recognize that "[t]he distinction between opinion and fact is not always clear." *See id*. ¶ 9. To aid this inquiry, "our supreme court has outlined four factors that are useful in distinguishing fact from opinion." *Id*. (cleaned up). They are

> (i) the common usage or meaning of the words used; (ii) whether the statement is capable of being objectively verified as true or false; (iii) the full context of the statement—for example, the entire article or column—in which the defamatory statement is made; and (iv) the broader setting in which the statement appears.

*West v. Thomson Newspapers*, 872 P.2d 999, 1018 (Utah 1994). Ultimately, we distinguish fact from opinion "[b]ased on the totality of circumstances in which the statements were made." *Id*.

A.     Common Usage and Objective Verifiability

¶24    "As we begin our analysis, we employ the common usage or meaning of the words to determine whether the statement is capable of being objectively verified as true or false." *Spencer*, 2017 UT App 69, ¶ 11 (cleaned up). Here, these factors largely—though not entirely—favor a determination that Cvent's statements are statements of fact.

¶25    As noted, in each of the four communications at issue, Cvent allegedly made statements claiming that RainFocus stole its source code, misappropriated its trade secrets, or interfered with its business relationships. The recitation of our analysis on this point is somewhat circumscribed by the fact that we cannot provide the actual language of most of these communications, but it is sufficient to state that we find some language whose common meaning is that RainFocus stole from Cvent. Critically, the communications at issue do not simply declare that RainFocus is intellectually dishonest, a mere opinion. Instead, they state the factual basis for such an opinion: that RainFocus stole source code and other materials from Cvent and used this material to lure away Cvent's customers. For example, in item three Cvent repeatedly emphasizes evidence supporting its position that RainFocus engaged in wrongdoing: "[W]e have evidence that they actually duplicated or plagiarized significant portions of our source code," and "we have evidence that they are using our confidential and proprietary information and trade secrets . . . to lure customers."

¶26    The Utah Constitution's protection of expressions of opinion would be abused here because the purported opinions "state[] or impl[y] facts that are false and defamatory." *See id*. ¶ 8

(cleaned up). Indeed, Cvent states facts (RainFocus stole source code and more) and asks us to read into them an opinion (RainFocus is dishonest), not the other way around. In items two and three, Cvent "describe[s] the perceived factual bases for [its] opinions" "to convince readers of the legitimacy of [the] opinion" that RainFocus is intellectually dishonest and untrustworthy. *See id*. (cleaned up). And item four presents RainFocus's alleged misdeeds as a settled fact. So the common usage of the language at issue cuts against calling the statements mere opinion.

¶27 Furthermore, whether RainFocus stole from Cvent is capable of being objectively verified as true or false and will, in fact, be so verified in the Federal Action. Cvent asserts that the statements are verifiable only to the extent they are true statements about the Federal Action, but in so saying, Cvent is attempting to have its cake and eat it too. Not all the communications at issue carefully couch each allegation in language like "we claim in the Federal Action that RainFocus stole our source code." Therefore, what is objectively verifiable—for at least some of the statements—is not that Cvent made these claims in the Federal Action but that RainFocus actually stole from Cvent. And this will be objectively verified through the Federal Action, which Cvent filed to prove that RainFocus did, in fact, do these things. This supports our finding that the alleged statements are factual rather than opinion-based.

¶28 We acknowledge that items one, two, and three include some verbal signals that Cvent is sharing its own conclusions or beliefs. But in items two and three, there are also multiple statements whose plain meaning and verifiability are clearly factual (including "we have evidence that they actually . . ."), and the alleged defamation in item four carries no verbal signals indicating opinion. Therefore, we are convinced that, for at least some of the allegedly defamatory language, the factors of common meaning and objective verifiability lean toward fact.

B.     Full Context of the Statements

¶29    Next, we consider "the full context of the statement—for example, the entire article or column—in which the defamatory statement is made." *West v. Thomson Newspapers*, 872 P.2d 999, 1018 (Utah 1994). The context of the allegedly defamatory statements in items one, three, and four is that of emailed communications among CEO or General Counsel and clients or prospective clients, and item two's context is that of a phone call among CEO, General Counsel, another Cvent employee, and a representative of a client company. In these contexts, clients or prospective clients might reasonably expect CEO and General Counsel to have inside information they could rely on as truth. *See GeigTech East Bay LLC v. Lutron Elecs. Co.*, No. 18 Civ. 5290 (CM), 2019 WL 1768965, *9 (S.D.N.Y. Apr. 4, 2019) ("An average reader might account for [the company president's] bias, somewhat neutralizing the sting of his comments. But an average reader might also conclude, equally reasonably, that [the company president] is privy to undisclosed and damning information, the details of which formed the basis for statements."). Were the communications to have come instead from a salesperson, for example, recipients would be more likely to view the statements as opinion rather than truth because such a person would presumably not be privy to extensive information about the Federal Action or Cvent's evidence and because it would be clear that the communications were intended solely to convince clients to do business with Cvent, not to share critical factual information about RainFocus and the Federal Action.

¶30    Additionally, each communication—when viewed as a whole—lacks hedging that would put recipients on notice that it was merely conveying Cvent's opinion.[9] For example, item one's

---

9. Phrases like "we think" "in and of themselves do not save the statements in issue from being defamatory." *ZAGG, Inc. v.*

(continued…)

only language indicating that the allegations against RainFocus are Cvent's own conclusions is also interpretable as the CEO sharing a factual conclusion based on evidence to which he was privy. Item two contains no hedging, and the only language from the call clearly signaling opinion relates to Cvent's optimism for succeeding in the Federal Action, leaving many other statements averred as fact, such that the communication appears factual rather than opinion-based. Item three contains three statements indicating what Cvent "believe[s]" about RainFocus's actions, and contextually it presents the allegations as claims in the Federal Action, but there is also strong language pointing to Cvent's evidence about RainFocus's actual wrongdoing, so the strongest statements and the email as a whole read more as expressions of fact than as expressions of opinion. And item four contains no hedging or cautious language indicating that it is opinion, so the email reads as fact-based.

¶31 Furthermore, there is very little language in the communications that is exaggerated or hyperbolic. This cuts against a finding of opinion because courts have interpreted such language as a signal of opinion. *See, e.g.*, *West*, 872 P.2d at 1010 ("Exaggerated commentary such as this is not likely to damage [one's] reputation. Other courts have found exaggerated editorial

---

*Catanach*, No. 12-4399, 2012 WL 4462813 at *3 (E.D. Pa. Sept. 27, 2012) (citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18 (1990)) (applying Utah law). "It would undermine the law of defamation if speakers or authors could simply employ a talismanic word formula to absolve themselves of slander or libel." *Id.* But phrases indicating that what follows is the author's opinion are still noteworthy in considering the totality of the circumstances. We expect that the more an allegedly defamatory statement bangs the gong of objective verifiability, the more hedging and careful couching as opinion would be necessary to keep it in the realm of opinion.

commentary not defamatory."); *id.* (collecting cases); *Spencer v. Glover*, 2017 UT App 69, ¶ 12, 397 P.3d 780 ("The phrase 'worst ever' expresses [the defendant's] subjective belief and amounts to rhetorical hyperbole." (cleaned up)); *see also Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) ("[E]ven the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet . . . ."). This principle that hyperbole signals opinion accounts for the effect exaggerated language often has on readers. *See Jacob v. Bezzant*, 2009 UT 37, ¶ 29, 212 P.3d 535 ("Newspaper readers expect that statements in editorials will be more exaggerated and polemicized than hard news. Readers are therefore less likely to form personal animus toward an individual based on statements made in an editorial." (cleaned up)). There are a few alleged statements in item two that could potentially fall into this category of exaggerated or hyperbolic language, such as the statement that a third-party expert called this case "the most egregious example of IP theft they have ever seen." However, this statement convinces the hearer not that Cvent is sharing its own exaggerated opinion but that the truth of Cvent's allegations has been confirmed by an independent expert. Besides this statement, most others in item two are not hyperbolic, and there are no statements in the other items that fall into this category. What's more, the tone in all four communications is serious and professional, supporting an interpretation that Cvent is conveying factual information.

¶32 We acknowledge that each item contains language that clearly connects the allegedly defamatory statements to the Federal Action. This context militates in favor of opinion because the recipients would expect Cvent to have an opinion about the lawsuit as a party therein. However, in light of the reality that these statements are from Cvent's CEO and General Counsel and use language either boldly asserting RainFocus's wrongdoing or pointing to evidence Cvent has of such wrongdoing with only minimal—if any—signaling of opinion and virtually no

exaggeration, the explicit or implied references to the Federal Action are not sufficient for us to characterize the alleged communications as opinion.

## C.    Broader Setting

¶33    Finally, we examine "the broader setting in which the statement appears." *See West*, 872 P.2d at 1018. Our case law confirms that the setting of alleged defamation is critical. In *West v. Thomson Newspapers*, 872 P.2d 999, 1018 (Utah 1994), our supreme court determined that an article was a protected opinion "in part because it was published in a weekly editorial column. The article's publication in that setting was enough to indicate to readers that the statements were not hard news and argued strongly in favor of finding the statements to be protected opinion." *Spencer*, 2017 UT App 69, ¶ 19 (cleaned up) (discussing *West*, 872 P.2d at 1020).

¶34    In *Spencer v. Glover*, 2017 UT App 69, 397 P.3d 780, we also considered the setting important where an attorney sued a former client for defamation based on a negative online review. *Id.* ¶ 19. We stated,

> [O]nline reviews communicate a person's experience with and opinion of a business. Some types of writing or speech by custom or convention signal to readers or listeners that what is being read or heard is likely to be opinion, not fact. The presence of [the former client's] objectionable statements in an online review platform signals to readers that he was communicating his negative opinion about [the attorney].

*Id.* (cleaned up).

¶35 Likewise, in *Jacob v. Bezzant*, 2009 UT 37, 212 P.3d 535, our supreme court held that there was no defamatory meaning in an election notice because "the statement came within a heated political campaign" and "was an editorial." *Id.* ¶ 30. The court noted that "[p]olitical speech enjoys the broadest protection under the First Amendment" and that editorials are "traditionally a source of political invective." *Id.* ¶ 29. Therefore, it found the editorial to be "part of the healthy political exchange that is the foundation of our system of free speech and free elections." *Id.*

¶36 The broader setting here is that of Cvent reaching out to RainFocus's clients or prospective clients to discourage them from doing business with RainFocus by sharing allegations from the Federal Action that RainFocus misappropriated Cvent's trade secrets and tortiously interfered with its business. We cannot broadly extend the protection of opinion to situations where a company intentionally injures the business prospects of another by reaching out to its clients or prospective clients and repeating allegations made in a lawsuit. "At its core, an action for defamation is intended to protect an individual's interest in maintaining a good reputation," *Spencer*, 2017 UT App 69, ¶ 7 (cleaned up), and expanding the protections of opinion in the way Cvent wants would give companies license to freely tarnish a competitor's reputation in private, targeted communications undercutting their business so long as recipients are on notice that a lawsuit is pending. This cannot be right. We have already discussed the undesirability of this outcome in the context of the judicial proceeding privilege, *see supra* ¶¶ 17–19, and we are no more inclined to invite such an outcome in this context.

¶37 Furthermore, accepting Cvent's position that the alleged statements were mere opinion is illogical. Cvent's purpose in reaching out to the third parties was ostensibly to inform those companies that RainFocus was intellectually dishonest—because it stole from Cvent—and, accordingly, to warn those companies against doing business with RainFocus because it was

untrustworthy. But if Cvent's accusations that RainFocus stole its source code and misappropriated trade secrets were mere opinion and not clearly communicated as such, then Cvent itself would be intellectually dishonest. As discussed above, we do not believe the statements were clearly communicated as opinion, so Cvent's own reputation relies on these communications being factual (and correct). If the recipients cannot trust that Cvent's very serious allegations are factual, they would not be able to trust further serious, professional, private communications presenting what appear to be facts from Cvent's CEO and General Counsel.

¶38 We acknowledge that this setting may favor an interpretation of opinion to the extent that clients or prospective clients would expect Cvent to have opinions about RainFocus's actions and about Cvent's prospects of prevailing in the Federal Action. And we agree that clients would recognize Cvent's interest in convincing them to do business with Cvent instead of RainFocus, making the clients likely to treat Cvent's comments on this topic with some skepticism. However, in the context of intentional, private, and targeted undercutting of a competitor's business by sharing alleged facts, we conclude that the broader setting strongly favors an interpretation of the alleged communications as factual in nature.

¶39 We find the difference between the setting in the present case and the settings in *West*, *Spencer*, and *Jacob* to be significant.[10]

---

10. Cvent would like us to adopt the "predictable opinion" doctrine discussed by the Ninth Circuit Court of Appeals in *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781 (9th Cir. 1980), but we decline to do so. There, an electronics products manufacturer sued a marketing firm for defamation based on a statement made by counsel and published in a press release referring to the manufacturer's separate suit for breach of contract and misrepresentation that, "in the opinion of [the

(continued…)

Private emails from a company's CEO and general counsel are not traditional sources of contentious and lively debate like editorials and online forums. And we do not identify a strong public interest in preserving a right for businesses to undercut competitors by reaching out to their clients or prospective clients and spreading defamatory allegations. Therefore, we conclude that the broader

---

marketing firm's] management, the action by [the manufacturer] is intended as a device by [the manufacturer] to avoid payment of its obligations." *Id.* at 783 (cleaned up). The court stated that "even apparent statements of fact may assume the character of statements of opinion . . . when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole." *Id.* at 784 (cleaned up). The court reasoned that when the "loyalties and subjective motives of the parties are reciprocally attacked and defended in the media and other public forums, the statement is less likely to be understood as a statement of fact rather than as a statement of opinion." *Id.* Accordingly, the court ruled that the statements were non-actionable opinion. *Id.*

We note a critical distinction where the broader setting here was not "in the media and other public forums." *Id.* In such public forums, both parties are able to share their opinions about the litigation in an attempt to sway public opinion. But here, the communications at issue were private, and RainFocus had no opportunity to respond to Cvent's allegations or attempt to sway public opinion. Accordingly, we decline Cvent's invitation to embrace the predictable opinion doctrine in the context of a company privately sharing allegations to undercut a competitor's business. We also note our concern that embracing this doctrine carries many of the risks that the excessive publication doctrine is designed to counter. *See supra* ¶ 15. At this time, we do not address whether these doctrines can or ought to coexist in Utah defamation law.

setting leans strongly against treating Cvent's statements as opinion.

D.      Totality of the Circumstances

¶40    In considering the totality of the circumstances, we conclude that Cvent's statements should be treated as statements of fact rather than statements of opinion. First, the common usage or meaning of the words leans toward interpreting the alleged statements about RainFocus's purported wrongdoing as factual, though not equally for each statement. Second, within each of the four items, there are at least some statements that are objectively verifiable. Third, in considering the full context of the statements, each comes from Cvent's CEO or General Counsel, both of whom would be expected to have significant information related to the Federal Action and the truth of its allegations—the same allegations repeated in the statements at issue. The statements are also not particularly careful to couch allegations in language indicating opinion and do not employ hyperbole or exaggeration but rather come across as serious allegations of fact. And fourth, the broader setting weighs heavily against viewing the statements as opinion. So while some of the communications are more clearly factual than others, we conclude that there is sufficient reason to find all of them to be statements of fact rather than opinion.

¶41    We note again that we are not deciding that Cvent's alleged statements *are* defamatory but rather that they are subject to a defamatory meaning. *See O'Connor v. Burningham*, 2007 UT 58, ¶ 26, 165 P.3d 1214. Accordingly, for them to be found defamatory, they must be proven to have been made by Cvent and must also be proven to be false. *See Jensen v. Sawyers*, 2005 UT 81, ¶ 35, 130 P.3d 325. Cvent has pursued the Federal Action to prove the truth of its claims, and its success therein would protect these alleged statements from RainFocus's defamation suit.

CONCLUSION

¶42    We disagree with the district court that Cvent's statements are nondefamatory as either truth or opinion. Accordingly, we reverse the district court's dismissal of RainFocus's defamation claims. We likewise reverse the dismissal of the claim for intentional interference with economic relations, which was based on the alleged defamation constituting "improper means." We remand to the district court for further proceedings consistent with this opinion.

———————